**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NATHANIEL SILVA and PHIL ROTHKUGEL, on behalf of themselves and all others similarly situated, | : : : | C.A. No. 3:23-cv-01695-MPS |
| Plaintiffs, | : : | |
| v. | : : | |
| SCHMIDT BAKING DISTRIBUTION, LLC and SCHMIDT BAKING COMPANY, INC., | : : : | |
| Defendants. | : : | |

**<u>PLAINTIFFS' MOTION FOR CERTIFICATION</u>**

**<u>OF AN INTERLOCUTORY APPEAL</u>**

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................. 1

II.  PROCEDURAL HISTORY ................................................................. 3

III. STANDARD FOR CERTIFYING AN APPEAL UNDER 28 U.S.C. § 1292(b) ... 5

IV.  THE 1292(b) STANDARD IS SATISFIED HERE ............................... 6

     A.   *It is Common for Employers to Require Delivery Drivers and Other Workers to Incorporate to Avoid Liability under Wage and Hour Laws* ...................... 6

     B.   *The Court's Decision Raises the Significant Question of Whether Individual Transportation Workers, Otherwise Exempt from the FAA, forfeit the Exemption They Incorporate* ........................................................ 9

     C.   *Application of these Issues to the Section 1292(b) Standards* ...................... 14

       1. Controlling Issue of Law ............................................................. 14

       2. Substantial Ground for Difference of Opinion ............................ 15

       3. An Interlocutory Appeal Will materially advance the ultimate termination of the litigation ......................................................... 16

       4. Additional Considerations .......................................................... 17

V.   PLAINTIFFS REQUEST CERTIFICATION OF THE QUESTION OF WHETHER THE AGREEMENT DELEGATES ENFORCEABILITY AND SCOPE QUESTIONS TO THE ARBITRATOR ................................. 18

VI.  CONCLUSION ................................................................................. 18

i

# TABLE OF AUTHORITIES

**CASES**

*Aleksanian v. Uber Techs. Inc.*,
    No. 22-98-CV, 2023 WL 7537627 (2d Cir. Nov. 14, 2023)................................................ 15

*Alexander v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 981 (9th Cir. 2014) ........................................................................................ 7

*Amos v. Amazon Logistics, Inc.*,
    74 F.4th 591 (4th Cir. 2023) ................................................................................... 1, 13

*Anderson v. Homedeliveryamerica.com, Inc.*,
    2013 WL 6860745 (D. Mass. Dec. 30, 2013)............................................................ 6, 7

*Bissonnette v. LePage Bakeries Park St., LLC*,
    601 U.S. 246 (2024)............................................................................................ 2, 10, 15

*Brock v. Flowers Food, Inc.*,
    673 F. Supp. 3d 1180 (D. Colo. 2023)................................................................ 2, 12, 15

*Canales v. CK Sales Co., LLC*,
    67 F.4th 38 (1st Cir. 2023)................................................................................ 2, 12, 15

*Carmona Mendoza v. Domino's Pizza, LLC*,
    73 F.4th 1135 (9th Cir. 2023) .............................................................................. 10

*Carrow v. FedEx Ground Package Sys., Inc.*,
    2019 WL 7184548 (D.N.J. Dec. 26, 2019)............................................................... 7

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001)....................................................................................... 9, 10, 16

*Costello v. BeavEx Inc.*,
    303 F.R.D. 295 (N.D. Ill. 2014)............................................................................ 8

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) ............................................................................. 8

*Craig v. FedEx Ground Package Sys., Inc.*,
    335 P.3d 66 (Kan. 2014)...................................................................................... 7

*DaSilva v. Border Transfer of MA, Inc.*,
    377 F. Supp. 3d 74 (D. Mass. 2019) ..................................................................... 6

*Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*,
No. 11 Civ. 5994; 2012 WL 2952929 (S.D.N.Y. July 18, 2012) ....................................... 14

*In re FedEx Ground Package System, Inc.*,
712 F. Supp. 2d 776 (N.D. Ind. 2010) .................................................................. 7

*Fli-Lo Falcon, LLC v. Amazon.com Inc.*,
2022 WL 4451273 (W.D. Wash. Sept. 8, 2022) ............................................. 1, 13

*Fli-Lo Falcon, LLC v. Amazon.com, Inc.*,
97 F.4th 1190 (9th Cir. 2024) ................................................................ 1, 12, 13

*Gray v. Schmidt Baking Co., Inc.*,
2023 WL 9285466 (D. Md. Oct. 16, 2023) ................................................... 2, 14

*Gustafson v. Bell Atlantic Corp.*,
171 F. Supp. 2d 311 (S.D.N.Y. 2001) .................................................................. 7

*Islam v. Lyft, Inc.*,
2021 WL 2651653 (S.D.N.Y. June 28, 2021) ........................................ 6, 16, 18

*James v. Venture Home Solar, LLC*,
No. 3:21-CV-1306, 2024 WL 446085 (D. Conn. Feb. 6, 2024) ........................... 5

*Jason Roberts, Inc. v. Adm'r*,
127 Conn. App. 780; 15 A.3d 1145 (2011) ...................................................... 6, 7

*Klein v. Vision Lab Telecommunications, Inc.*,
399 F. Supp. 2d 528 (S.D.N.Y. 2005) ............................................................... 17

*Kuehner v. Dickinson & Co.*,
84 F.3d 316 (9th Cir. 2019) .............................................................................. 17

*Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act*,
2012 WL 5205557 (Conn. Super. Ct. Oct. 3, 2012) ........................................... 8

*Latimer v. Administrator, Unemployment Compensation Act*,
216 Conn. 237; 579 A.2d 497 (1990) ............................................................. 8, 9

*Lee v. Postmates Inc.*,
2019 WL 1864442 (N.D. Cal. 2019) ............................................................. 3, 16

*Martin v. Shelby Telecom, LLC*,
2012 WL 2476400 (N.D. Ala. June 26, 2012) .................................................... 7

*Martins v. 3PD, Inc.*,
    2013 WL 1320454 (D. Mass. Mar. 28, 2013)...................................................................... 6

*Moreover, in New Prime Inc. v. Oliveira*,
    586 U.S. 105 (2019)..................................................................... *passim*

*Muniz v. RXO Last Mile, Inc.*,
    2023 WL 5353749 (D. Mass. Aug. 21, 2023) ...................................................................... 6

*Murray v. UBS Sec., LLC*,
    No. 12 CIV. 5914 KPF, 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) ............................... 14

*Noll v. Flowers Foods Inc.*,
    442 F. Supp. 3d 345 (D. Me. 2020) ....................................................................... 4

*Oliveira v. New Prime, Inc.*,
    857 F.3d 7 (1st Cir. 2017)................................................................... 12, 16

*Padovano v. FedEx Ground Package Sys., Inc.*,
    2016 WL 7056574 (W.D.N.Y. Dec. 5, 2016)...................................................................... 7

*R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC*,
    447 F. Supp. 3d 339 (W.D. Pa. 2020)...................................................................... 13

*Rittmann v. Amazon.com, Inc.*,
    971 F.3d 904 (9th Cir. 2020) ....................................................................... 10

*Ruiz v. Affinity Logistics Corp.*,
    754 F.3d 1093 (9th Cir.) ....................................................................... 7

*ShaZor Logistics, LLC v. Amazon.com, LLC*,
    628 F. Supp. 3d 708 (E.D. Mich. 2022)....................................................................... 13

*Slayman v. FedEx Ground Package Sys., Inc.*,
    765 F.3d 1033 (9th Cir. 2014) ....................................................................... 7

*Smith v. Spizzirri*,
    144 S. Ct. 1173 (2024)....................................................................... 2

*Stone v. Wells Fargo Bank, N.A.*,
    361 F. Supp. 3d 539 (D. Md. 2019) ....................................................................... 18

*Sw. Airlines Co. v. Saxon*,
    596 U.S. 450 (2022)....................................................................... 15

*Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc.*,
    231 Conn. 690; 651 A.2d 1286; 651 A.2d 1290 (1995) ....................................... 8

*U.S. ex rel. Drake v. NSI, Inc.*,
    736 F. Supp. 2d 489 (D. Conn. 2010) ............................................................ 15

*Vidal v. Advanced Care Staffing, LLC*,
    2023 WL 2783251 (E.D.N.Y. Apr. 4, 2023) ....................................................... 18

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) ........................................................................ 10

**STATUTES**

Conn. Gen. Stat. 31.31-71a ................................................................................. 8

Title 9 U.S.C. § 1 ....................................................................................... 5, 9

Title 9 U.S.C. § 16(b) ..................................................................................... 6

Title 28 U.S.C. § 1292(b) ................................................................................. 15

Title 28 U.S.C.A. § 1292 ................................................................................... 5

Title 28 U.S.C.A. § 1292(b) ................................................................................ 1

I.       **INTRODUCTION**

On May 2, 2024, this Court entered an Order requiring the Plaintiffs, individuals who indisputably worked as delivery drivers for Defendants, to arbitrate their wage and hour claims. The Court held that the agreements containing the arbitration provision were not "contracts of employment," and therefore Plaintiffs were not subject to the so-called "transportation worker" exemption of the Federal Arbitration Act (FAA).  See Dkt. 32 at 10.  Plaintiffs move under 28 U.S.C.A. § 1292(b) for an Order certifying this question and the Court's Order compelling arbitration for appeal. Respectfully, this petition should be granted because, at the very least, there is significant doubt as to whether a worker claiming to be a transportation worker exempt from arbitration under Section 1 of the FAA forfeits that exemption simply because he was required to form a corporate entity when he began performing transportation services for a defendant. This doubt arises for several compelling reasons.

First the two appellate cases which this Court chiefly relied on, as well as most of the District Court decisions, emphasized that those claims were brought by corporate entities, not workers as is the case here.   Those opinions indicated that had the cases been brought by individual workers, such as in this case, the result would likely have been different. See, e.g., Fli-Lo Falcon, LLC v. Amazon.com Inc., 2022 WL 4451273, at *6 (W.D. Wash. Sept. 8, 2022) (distinguishing the circumstances in that case from the circumstances here, where the plaintiffs had "filed suit in their individual capacity"), report and recomm. adopted, 2022 WL 4448654 (W.D. Wash. Sept. 23, 2022), aff'd, 97 F.4th 1190 (9th Cir. 2024); Amos v. Amazon Logistics, Inc., 74 F.4th 591, 596–97 (4th Cir. 2023) ("sizable corporate entities are not 'similar in nature' to the actual human workers enumerated by the text of the 'transportation worker' exemption"). Indeed, under Connecticut's ABC test independent contractor test, it is almost certain that

Plaintiffs (who are "actual human workers"), will be found to be employees of the Defendants, and numerous cases directly on point have held that a defendant cannot defeat a finding of employment status by forcing the worker to incorporate. See Section III.A., infra.

Second, the facts of this case -- that the Plaintiff-delivery drivers were required to incorporate and then signed independent contractor distribution agreements on behalf of their corporate entities -- are the very same facts at issue in Bissonnette v. LePage Bakeries Park St., LLC, 601 U.S. 246 (2024) (now on remand to the Second Circuit from the Supreme Court),[1] Canales v. CK Sales Co., LLC, 67 F.4th 38 (1st Cir. 2023), and Brock v. Flowers Food, Inc., 673 F. Supp. 3d 1180 (D. Colo. 2023). In all of these cases, the fact that the individual driver performing work formed a corporate entity did not prevent application of the Section 1 exemption. Moreover, in New Prime Inc. v. Oliveira, 586 U.S. 105 (2019), the agreement at issue was between the defendant delivery company and the plaintiff's corporation. Yet, the Supreme Court found that the individual delivery driver was subject to a "contract of employment" in holding that that the Section 1 exemption applied.

For all these reasons, and still recognizing that this Court's decision is supported by some case law, see Gray v. Schmidt Baking Co., Inc., 2023 WL 9285466 (D. Md. Oct. 16, 2023), at a minimum, there is a significant question posed by the Court's decision that makes certification appropriate, particularly given that the Second Circuit may already be presented with this issue on remand in Bissonnette. Further, the Supreme Court's recent decision in Smith v. Spizzirri,

---

[1]     Indeed, in Bissonnette the Supreme Court described the agreement signed by the plaintiffs as a franchise agreement, and this did not raise any issues regarding whether the Section 1 exemption might apply. One would think that if the contracts at issue in that case were so obviously outside the Section1 exemption, the Court would not have engaged in an unnecessary and purely academic discussion of the other contours of the Section 1 exemption.

144 S. Ct. 1173, 1178 (2024) makes clear that a decision granting a motion to compel arbitration remains appealable under Section 1292(b).  Indeed, an interlocutory appeal under Section 1292(b) is now the only way for plaintiffs to address orders compelling arbitration without having to waste significant party and judicial resources.[2]

Given that the FAA Section 1 issue should be certified for appeal, Plaintiffs also request that the Court certify the question of whether the sophistication of the parties affects whether a reference to a specific arbitration provider (in this case, JAMS) constitutes adoption of a specific set of rules of that provider requiring delegation of contract enforceability questions.  As the Court noted in its decision, there is no Second Circuit decision on this issue.  See Dkt. 32 at 21.

## II.    **PROCEDURAL HISTORY**

The uncontested facts in this case are that Plaintiffs Silva and Rothkugel worked full-time as truck drivers for Defendants Schmidt Baking.  Both began working for Schmidt under a W-2 employment arrangement, during which time they picked-up bread and other baked goods from a Schmidt warehouse in Connecticut, delivered them to grocery stores and other retailers, unloaded the products and placed them on the store shelves, and removed any stale product from the shelves and returned it to Schmidt's warehouse.  See Dkt. 24-1 at ¶ 6; Dkt. 24-2 at ¶ 5.  After working for several months as admitted "employees," they were then required to form corporate

---

[2]     As discussed herein, it would waste significant resources for the parties to fully litigate the merits of their claims through discovery and trial in separate, individual arbitration proceedings, only to then return to court, appeal a final judgment, and obtain a decision that the FAA did not apply and that the case could not be compelled to arbitration.  See Lee v. Postmates Inc., 2019 WL 1864442 *4 (N.D. Cal. 2019) (granting permission for interlocutory appeal to preserve "the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter.").

entities and execute a Distributor Agreement with Schmidt to continue to perform the same work.  Dkt. 24-1, Silva Decl. at ¶ 9 ("Schmidt also required me to form a corporate entity in order to sign the agreement. Schmidt assisted me in forming the corporation. It was called Silva Baked Goods, Inc. I had never formed a corporation before.).

The Distributor Agreement requires Plaintiffs to "maintain an adequate and fresh supply of Products" in all retail outlets in their assigned territory; rotate product on the store shelves; remove "off code" products form the shelves; and provide services "consistent with good industry practice."  Dkt. 11 at p. 55.[3]  Though the Court noted that the contract formally states that Defendants sell the products to Plaintiffs to be resold to stores, Plaintiffs do not actually engage in "sales" activity; "Defendants' managers and sales representatives are responsible for negotiating with the grocery stores and other retailers regarding the pricing, sale, and promotion of particular Schmidt products."  Id. at ¶ 19.  In similar cases litigated in this industry, courts have observed that delivery drivers working under this model do not actually perform any true "sales" work.  See Noll v. Flowers Foods Inc., 442 F. Supp. 3d 345, 352 (D. Me. 2020) (noting that "approximately 95 percent of total sales are generated by large chain accounts… through separate agreements with Defendants. The parties agree that Defendants have primary responsibility for setting the terms for pricing, products, and volumes, as well as setting delivery expectations and customer requirements, for these large accounts.").  This is consistent with the record in this case as well.  See Dkt. 24-1.

---

[3]      As the Court observed, Plaintiffs signed a personal guarantee of all obligations under the Agreement.  Thus, they remained personally responsible for maintaining the fresh supply of baked goods at the assigned retail outlets, removing all stale product, performing all record-keeping requirements.  See Dkt. 11 at p. 144.

Plaintiffs' responsibilities included picking up bread and baked goods from a warehouse five days per week, loading them onto their commercial delivery vehicles, driving the delivery trucks to grocery stores and retailers, and then unloading the products and placed them on the store shelves.  See Dkt. 24-1 at ¶ 15.  They performed this work full-time.  See id. at ¶ 16.

On January 5, 2024, Defendants filed a motion to compel arbitration of the claims asserted in this case.  The Court granted the motion, holding in relevant part that Plaintiffs were covered by the Federal Arbitration Act, which exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  The Court held that the Supreme Court has not addressed whether a contract between two business entities could constitute a contract of employment, and further held that "[b]ecause the Distribution Agreements here are between two business entities, they are not contracts of employment and the § 1 exception does not apply."  See Dkt. 32 at 10.

Plaintiffs request that the Court certify this issue for interlocutory appeal under Section 1292. Such an appeal is appropriate because the Court's decision creates a split in authority in the caselaw regarding the application of New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) and whether a delivery driver claiming to be a transportation worker exempt from arbitration under Section 1 of the FAA forfeits that exemption simply because they were required to form a corporation when they began performing transportation services for the defendant.

III.     **STANDARD FOR CERTIFYING AN APPEAL UNDER 28 U.S.C. § 1292(b)**

In order to certify an order for interlocutory appeal, the district court must determine and state in writing that such order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation ...." 28 U.S.C.A. § 1292 (b).  James

5

v. Venture Home Solar, LLC, No. 3:21-CV-1306 (CSH), 2024 WL 446085, at *10 (D. Conn. Feb. 6, 2024).

As set forth below, the question of <u>New Prime's</u> application in this case satisfies all of these criteria.  <u>See</u> <u>Islam v. Lyft, Inc.</u>, 2021 WL 2651653, at *3 (S.D.N.Y. June 28, 2021) (holding that decision granting motion to compel arbitration that relied upon the scope of the FAA transportation worker exemption satisfied the requirements for interlocutory appeal). The FAA explicitly recognizes that "an order compelling arbitration may not be appealed **"[e]xcept** as otherwise provided in section 1292(b)." 9 U.S.C. § 16(b) (emphasis added).  Thus, an appeal under Section 1292 is consistent with the FAA.

IV.   **THE 1292(b) STANDARD IS SATISFIED HERE**

   *A.*   It is Common for Employers to Require Delivery Drivers and Other Workers to Incorporate to Avoid Liability under Wage and Hour Laws

The "incorporation" issue at the heart of this case is prevalent in today's economy.  It has increasingly become a common practice of companies like Defendants to require delivery drivers and other workers to incorporate and sign agreements purporting to create an "independent contractor" or "business" relationship.  Time and again, those workers have nonetheless been held to be employees under various state and federal wage statutes.  <u>See</u> <u>Jason Roberts, Inc. v. Adm'r</u>, 127 Conn. App. 780, 782, 15 A.3d 1145, 1147 (2011) (holding that worker was an "employee" of concrete business even though the business "directed [the worker] to set up a business so that he could enter into an agreement with the plaintiff as a licensed dealer").[4]  For

---

[4]   <u>See also</u> <u>e.g.</u>, <u>Muniz v. RXO Last Mile, Inc.</u>, 2023 WL 5353749, at *8 (D. Mass. Aug. 21, 2023); <u>DaSilva v. Border Transfer of MA, Inc.</u>, 377 F. Supp. 3d 74, 98 (D. Mass. 2019); <u>Martins v. 3PD, Inc.</u>, 2013 WL 1320454, at *13 (D. Mass. Mar. 28, 2013); <u>Anderson v. Homedeliveryamerica.com, Inc.</u>, 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013).

example, FedEx utilized a similar model – requiring drivers to form corporate entities and having

them sign agreements to work as independent contractors.  Those drivers were repeatedly held to

be employees under various state wage statutes.[5]

Indeed, there is an abundance of caselaw holding that employers cannot deprive

individual workers of employment status by requiring them to form corporate entities and to sign

so-called independent contractor or business agreements.  Carrow v. FedEx Ground Package

Sys., Inc., 2019 WL 7184548, at *5 (D.N.J. Dec. 26, 2019) ("… employers cannot avoid the

legal responsibilities of the employee relationship by forcing their employees to incorporate.");

see Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5,

2016) ("If any business could avoid [wage and hour laws] by simply classifying their workers as

independent contractors and compensating them through corporations rather than paying them

directly, [wage and hour laws] would be rendered useless"); see also Jason Roberts, Inc., 127

Conn. App. at 787 (rejecting employer's argument that because it executed "franchise

agreements" with workers, it fell outside of the application of the "ABC" test under Connecticut

law).[6]

---

[5]      See, e.g., Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1047 (9th Cir. 2014) (holding that FedEx delivery drivers were employees under Oregon's wage laws); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 988 (9th Cir. 2014) (holding that FedEx delivery drivers were employees for purposes of California's wage laws); Craig v. FedEx Ground Package Sys., Inc., 335 P.3d 66, 92 (Kan. 2014) (holding that FedEx delivery drivers were employees for purposes of Kansas' wage laws); In re FedEx Ground Package System, Inc., 712 F. Supp. 2d 776, 793 (N.D. Ind. 2010) ("[I]f FedEx retains the right to control unincorporated [] drivers, it retains the right to control incorporated [] drivers.").

[6]      See also Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1103 (9th Cir.) cert. denied, 135 S. Ct. 877 (2014) ("While purporting to relinquish some control to the drivers by making the drivers form their own businesses and hire helpers, Affinity retained absolute overall control over the key parts of the business) (internal quotation marks omitted); Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311 (S.D.N.Y. 2001) (finding employee status despite incorporation; Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 at *2 ( D. Mass. Dec. 30, 2013)

7

Employee status for purposes of the Connecticut wage laws at issue in this case is determined under the "ABC" test set forth in <u>Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc.</u>, 231 Conn. 690, 698, 651 A.2d 1286, 1290 (1995). Under this framework, service performed by an individual shall be deemed to be employment unless the alleged employer, or the entity claiming the exemption, can establish that:

(I)     such individual has been and will continue to be free from control and direction in connection with the performance of such service, both under his contract for the performance of service and in fact; and

(II)    such service is performed either outside the usual course of the business for which the service is performed or is performed outside of all the places of business of the enterprise for which the service is performed; and

(III)   such individual is customarily engaged in an independently established trade occupation, profession or business of the same nature as that involved in the service performed...."

<u>See</u> <u>Tianti</u>, 231 Conn. at 698, 651 A.2d at 1290 (interpreting Conn. Gen. Stat. § 31-71a).[7]

The fact that workers may have "signed an agreement that they were 'independent contractors' is of no moment." <u>Latimer v. Administrator, Unemployment Compensation Act</u>, 216

---

(internal citation omitted) ("[A] worker can qualify as an employee ... even if he has incorporated his business, and the employer's formal relationship is with the entity and not the individual" because such a "formalistic distinction is precisely what [the wage law] is intended to preclude"); <u>Martin v. Shelby Telecom, LLC</u>, 2012 WL 2476400, *3-7 (N.D. Ala. June 26, 2012) (holding worker's incorporated status does not create genuine issue of material fact as to employment status where evidence suggests employer controlled means of work and opportunity for profit).

[7]     Under this so-called "ABC test," countless courts have found that delivery drivers like the Plaintiffs are employees.  <u>See</u> <u>Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act</u>, 2012 WL 5205557 (Conn. Super. Ct. Oct. 3, 2012) (fifty-two truck drivers were employees under Connecticut "ABC" test); <u>Costello v. BeavEx Inc.</u>, 303 F.R.D. 295, 311 (N.D. Ill. 2014) (plaintiff delivery drivers were employees as a matter of law under Illinois "ABC" test which is nearly identical to Connecticut's), <i>subsequent history at</i> <u>Costello v. BeavEx, Inc.</u>, 810 F.3d 1045 (7th Cir. 2016).

Conn. 237, 251, 579 A.2d 497 (1990). "The primary concern is what is done under the contract and not what it says." Id. (internal quotations omitted).[8]

Thus, Plaintiffs Silva and Rothkugel have filed this action as presumed employees under the Connecticut wage laws, and they are likely to succeed on their claims to recover unpaid wages unless Defendants can carry their burden on all three elements of the Connecticut ABC test. This consideration is significant because, although requiring a worker to incorporate does not preclude a finding of employment status under state and federal wage laws, the Court found that Plaintiffs had not entered into a contract of employment when considering a similar question in the context of the FAA. The significance of whether a delivery driver forfeits the Section 1 exemption simply because they were required to form a corporate entity and sign an agreement purporting to classify them as independent contractors cannot be overstated. The prevalence of this "incorporation requirement" demonstrates that this issue will arise in many future cases and is therefore significant.

> B.  The Court's Decision Raises the Significant Question of Whether Individual Transportation Workers, Otherwise Exempt from the FAA, forfeit the Exemption They Incorporate

The FAA generally provides that arbitration shall be enforced, but it also specifically exempts contracts of employment of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118–19 (2001). The residual clause of "any other class of workers

---

[8]    As set forth more fully below, this test is strikingly similar to the U.S. Supreme Court's test in New Prime where the Court said it was of no consequence that the underlying agreement purported to be an independent contractor agreement between businesses and that such an agreement was nonetheless a "contract of employment" for purposes of applying the Section 1 exemption.  See New Prime, 586 U.S. at 121.

engaged in… interstate commerce" exempts from the FAA "contracts of employment of transportation workers…." Circuit City, 532 U.S. at 119. In order for the Section 1 transportation worker exemption to apply, the arbitration agreement at issue must be found in a 1) contract of employment of a 2) class of transportation workers 3) engaged in interstate commerce.

In this Action, Plaintiffs are among a class of transportation workers engaged in interstate commerce.  They loaded, unloaded, and drove delivery trucks full of commercial bread products that had been manufactured outside of Connecticut and were transported to Connecticut to be sold at various grocery stores and retailers across the State.  Courts of Appeals have repeatedly held that a worker need not physically cross a state border to be engaged in interstate commerce, and if he or she merely performs intrastate transportation of goods that traveling in interstate commerce, he or she is engaged in interstate commerce for purposes of the Section 1 exemption. Waithaka v. Amazon.com, Inc., 966 F.3d 10 (1st Cir. 2020); Rittmann v. Amazon.com, Inc., 971 F.3d 904, 916 (9th Cir. 2020); Carmona Mendoza v. Domino's Pizza, LLC, 73 F.4th 1135, 1138 (9th Cir. 2023).  And in Bissonnette v. LePage Bakeries Park St., LLC, 601 U.S. 246 (2024), the Court held that a truck driver may still be a "transportation worker," even if his employer is not in the "transportation industry," for example if his employer purports to be in the baking industry.  The Supreme Court reiterated that the actual work that the individual performs determines whether he or she is a "transportation worker."

The "contract of employment" issue was squarely addressed in New Prime Inc. v. Oliveira, 586 U.S. 105 (2019).  In New Prime, an individual plaintiff (Mr. Oliveira) worked as a truck driver for New Prime and asserted wage-and-hour claims against that entity.  The defendant had moved to compel arbitration based on an arbitration agreement in the contract executed between Mr. Oliveira's corporate entity and New Prime.  The Supreme Court first

10

noted that the Parties had stipulated that Mr. Oliveira was a transportation worker and that he was engaged in interstate commerce.  ***Therefore, the only question presented was whether the contract at issue was a "contract of employment."***  The Court held that a "contract of employment" is not limited to a modern or superficial understanding of an employment relationship.  Instead, under the FAA, a "contract of employment" is broadly defined to include any contract for the performance of work, as it would have been in 1925 when the FAA was enacted. See New Prime, 586 U.S. at 121. Indeed, in 1925 "a 'contract of employment' usually meant nothing more than an agreement to perform work."  586 U.S. at 114. Accordingly, the Supreme Court affirmed the lower court ruling and held that the "agreement with New Prime falls within § 1's exception."  See id. at 121.

Critically, for this case, the New Prime agreement that was before the Supreme Court (which is submitted herewith as Exhibit 1) was also between plaintiff's company and New Prime, **not** with Oliviera.  The signature line was signed on behalf of Mr. Oliveira's corporation, Hallmark Trucking:



Thus, the New Prime contract is legally indistinguishable from the contract here with respect to the incorporation issue. It was executed by two corporate entities, and like here, the New Prime agreement purported to permit Mr. Oliveira to hire other "employees" to perform the assigned delivery services, and did not require him to personally perform any work.  See Exhibit 1.

11

This type of work arrangement was common at the time that the FAA was enacted in 1925, as often an entity in need of transportation services would contract with a teamster, *and the contract did not require the signatory to personally perform the services*, as described in the First Circuit's New Prime decision (which was affirmed by the Supreme Court). See Oliveira v. New Prime, Inc., 857 F.3d 7, 20 (1st Cir. 2017) (citing to America Law Reports from 1926 which referred to "employment" of an independent teamster even where the particular teamster was not personally responsible for performance of the service), aff'd, 586 U.S. 105 (2019). Thus, in New Prime, the Supreme Court held that the agreement before it – executed by Hallmark Trucking, LLC and New Prime, Inc., was a contract of employment exempt from the FAA, *despite the fact that the record reveals that it did not purport to require personal services by Mr. Oliveira*.

Consistent with New Prime, several courts have considered facts nearly identical to the case at bar and have held that delivery drivers are exempt from the FAA, even where they were required to incorporate and signed contracts on behalf of the corporate entities. See Canales v. CK Sales Co., LLC, 67 F.4th 38, 46 (1st Cir. 2023) (holding that bakery distributor drivers performing the same duties as here were exempt from the FAA even where their contracts permitted them to "delegate driving to other persons" and the drivers were technically among a class of "workers who own companies"), cert. denied, No. 23-460, 2024 WL 1706017 (U.S. Apr. 22, 2024). Brock v. Flowers Food, Inc., 673 F. Supp. 3d 1180, 1186 (D. Colo. 2023) ("Mr. Brock's status as an independent distributor who owns his own company, Brock, Inc., does not disturb [the] conclusion" that he was exempt from the FAA).

Here, when analyzing the application of the Section 1 exemption in this case, the Court considered a line of lower court decisions holding that a corporation is not "transportation worker" exempt from the FAA. See, e.g., Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th

12

1190, 1195–96 (9th Cir. 2024) (holding that "a nonnatural person such as a business entity that employs or contracts with transportation workers, is not and cannot be a transportation worker…."); Amos v. Amazon Logistics, Inc., 74 F.4th 591, 596–97 (4th Cir. 2023) ("sizable corporate entities are not 'similar in nature' to the actual human workers enumerated by the text of the 'transportation worker' exemption").  These cases involve instances in which sizable corporate entities, *as named plaintiffs* (as opposed to individual human worker plaintiffs), have brought suit asserting breach of contract and similar claims,[9] and attempted to argue that the corporate entity plaintiffs were exempt from the FAA pursuant to the transportation worker exemption.  See ShaZor Logistics, LLC v. Amazon.com, LLC, 628 F. Supp. 3d 708 (E.D. Mich. 2022); R & C Oilfield Servs., LLC v. Am. Wind Transp. Grp., LLC, 447 F. Supp. 3d 339 (W.D. Pa. 2020).  That issue is not present here, where Plaintiffs Silva and Rothkugel are individual workers invoking the Section 1 exemption, *just like Mr. Oliveira in* **New Prime**.

Indeed, the lower court in Fli-Lo Falcon specifically distinguished the circumstances in that case from the circumstances here, where the plaintiffs had "filed suit in their individual capacity." Fli-Lo Falcon, LLC v. Amazon.com Inc., 2022 WL 4451273, at *6 (W.D. Wash. Sept. 8, 2022), report and recomm. adopted, 2022 WL 4448654 (W.D. Wash. Sept. 23, 2022), aff'd, 97 F.4th 1190 (9th Cir. 2024).  Similarly, the district court in ShaZor Logistics, LLC v. Amazon.com, LLC, 628 F. Supp. 3d 708 (E.D. Mich. 2022) distinguished the case from instances in which the plaintiff was an actual worker (as opposed to a corporation), bluntly observing the fact that "Plaintiff is not an independent contractor, employee, or worker; it is an LLC." Id. at 712.

---

[9]     The corporate plaintiff in Amos that alleged that it was a "transportation worker" had "deveral hundred delivery drivers on its payroll."  Amos, 74 F.3d at 597.

At bottom, the decisions in <u>Fli-Lo Falcon</u> and similar cases expressly distinguished their holdings from the precise circumstances of this case where Mr. Silva and Mr. Rothkugel are individually asserting employment claims against Defendants and both, as individuals, are "transportation workers" (and there are no corporate plaintiffs in this case). Neither <u>Fli-lo Falcon</u> nor similar cases addressed the significant issue in this case, which is whether an individual transportation worker who would otherwise be exempt from arbitration under the FAA loses that exemption if he is required to form a corporate entity. Given that the facts here are identical to <u>New Prime</u>, <u>Canales</u>, and <u>Brock</u>, Plaintiff submits that requiring a transportation worker to incorporate does not affect applicability of the Section 1 exemption. However, to the extent the Court's decision here, and the decision in <u>Gray v. Schmidt Baking Co., Inc.</u>, 2023 WL 9285466 (D. Md. Oct. 16, 2023), suggest that by incorporating and signing the agreements on behalf of their corporations, the transportation workers are no longer exempt from the FAA, there is now a significant issue in the law emerging that should be addressed by the Second Circuit.

### C. Application of these Issues to the Section 1292(b) Standards

#### 1. Controlling Issue of Law

In deciding whether there is a controlling question of law, a district court may "consider whether 'reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action; or, the certified issue has precedential value for a large number of cases.'" <u>Murray v. UBS Sec., LLC</u>, No. 12 CIV. 5914 KPF, 2014 WL 1316472, at *3 (S.D.N.Y. Apr. 1, 2014) (quoting <u>Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP</u>, No. 11 Civ. 5994 (CM), 2012 WL 2952929, at *4 (S.D.N.Y. July 18, 2012)).

Here, all of these factors support an interlocutory appeal.  If the District Court's holding regarding the transportation worker exemption is reversed, then the case will proceed as a putative class action in court, as opposed to two individual arbitrations.  And a decision on this issue from the Second Circuit would have significant precedential value because the scope of the transportation worker exemption is a hotly contested issue across the country, as evidenced by the large number of cases that have addressed this issue in the past several years.  See generally Bissonnette v. LePage Bakeries Park St., LLC, 601 U.S. 246 (2024); Sw. Airlines Co. v. Saxon, 596 U.S. 450 (2022); Aleksanian v. Uber Techs. Inc., No. 22-98-CV, 2023 WL 7537627, at *1 (2d Cir. Nov. 14, 2023).  Moreover, many companies require delivery drivers and other workers to incorporate in order to perform work, and the prevalence of this issue demonstrates that the question at the heart of this case will arise in other cases.  Accordingly, a precedential opinion from the Second Circuit would aid district courts and parties in future cases.

### 2. Substantial Ground for Difference of Opinion

There is also a "substantial ground for difference of opinion" on the present issue.  See 28 U.S.C. § 1292(b). To fulfill this element, Plaintiffs must show that "(1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." U.S. ex rel. Drake v. NSI, Inc., 736 F. Supp. 2d 489, 503 (D. Conn. 2010). Here, both issues meet these conditions.

As described above, there is a line of cases holding that truck drivers who assert claims for unpaid wages are transportation workers exempt from the FAA, even where they were required to incorporate and signed an independent contractor agreement or similar contract on behalf of that corporate entity.  See New Prime Inc. v. Oliveira, 586 U.S. 105 (2019); Canales v. CK Sales Co., LLC, 67 F.4th 38 (1st Cir. 2023), Brock v. Flowers Food, Inc., 673 F. Supp. 3d

1180 (D. Colo. 2023). There is a second line of cases, which includes <u>Gray</u> and the Court's decision here, holding that when an individual delivery driver who would be exempt from the FAA has formed a corporate entity (even if that corporate entity is not a party to the lawsuit), the FAA applies to compel arbitration of their claims.

A resolution of this conflict has significant ramifications for the purposes of the FAA and interstate commerce. Specifically, the reason that Congress exempted transportation workers from the FAA was its "concern with transportation workers and their necessary role in the free flow of goods" at the time when it enacted the FAA. <u>Circuit City</u>, 532 U.S. at 121. In <u>New Prime</u>, the First Circuit observed that, "[g]iven that concern," it would make no sense for Congress to distinguish between "independent contractors performing transportation work and employees performing that same work," because both "play the same necessary role in the free flow of goods." <u>New Prime, Inc.</u>, 857 F.3d at 22. Likewise, Plaintiffs suggest that there is nothing in the text or history of the FAA, nor in any of the Supreme Court's recent decisions, that would support a distinction between incorporated delivery drivers and unincorporated delivery drivers. Simply put, whether Mr. Silva delivered bread and baked goods pursuant to a contract that he signed in his individual capacity, or a contract that he signed on behalf of a corporation that he was required to form, he still plays "the same necessary role in the free flow of goods." <u>See</u> <u>id.</u>

### 3. An Interlocutory Appeal Will materially advance the ultimate termination of the litigation

An interlocutory appeal will materially advance the litigation. "If the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court." <u>Islam v. Lyft, Inc.</u>, 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021); <u>Lee v.</u>

Postmates Inc., 2019 WL 1864442 *4 (N.D. Cal. 2019) (granting permission for interlocutory appeal to preserve "the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter."), quoting Kuehner v. Dickinson & Co., 84 F.3d 316, 319 (9th Cir. 2019).  And if interlocutory appeal is not permitted, following arbitration, Plaintiffs would ultimately seek to appeal the exact issues that they now seek to certify. Simply put, if it is determined that Plaintiffs should never have been compelled to arbitration in the first place under the FAA, requiring Plaintiffs to proceed in arbitration will greatly lengthen this litigation. See generally Klein v. Vision Lab Telecommunications, Inc., 399 F. Supp. 2d 528, 537 (S.D.N.Y. 2005) (stating that "[p]roceeding with the case where the possibility exists that this Court lacks jurisdiction could force plaintiffs to try this case twice, once in federal court and again in state court" and certifying the issue for interlocutory appeal).  It would be far more efficient for these issues to be resolved now, so that—whether Plaintiffs must ultimately proceed with their claims in arbitration or may proceed in court—the parties will only have to litigate the merits of these important issues once.

### 4.  Additional Considerations

Finally, the Bissonnette case has been remanded to the Second Circuit and that case contains identical facts to the instant matter.  There, delivery drivers were required to form corporations and worked full-time delivering breads and baked goods products in Connecticut. The question of whether these workers are exempt from the FAA is squarely before the Second Circuit.  This supports an interlocutory appeal because with the Bissonnette appeal already pending, "if the Second Circuit decides to hear the interlocutory appeal certified today, it may be appropriate and a preservation of judicial resources to consolidate the two cases on appeal, as

17

they present identical legal questions." <u>Islam v. Lyft, Inc.</u>, 2021 WL 2651653, at *6 (S.D.N.Y.

June 28, 2021) (certifying interlocutory appeal where similar appeal was already pending).

V.    **PLAINTIFFS REQUEST CERTIFICATION OF THE QUESTION OF WHETHER THE AGREEMENT DELEGATES ENFORCEABILITY AND SCOPE QUESTIONS TO THE ARBITRATOR**

As the Court held in its recent decision, the agreement at issue in this case states that "a

covered dispute *"shall be decided by a neutral, binding arbitration conducted in accordance*

*with the Judicial Arbitration and Mediation Services, Inc. ("JAMS").* Dkt 11 at 69 (Section

11.3).  The Court held that despite that Plaintiffs are individuals, their level of sophistication did

not affect whether this language clearly and unmistakably constituted an adoption of a particular

set of JAMS Rules that delegate threshold questions of arbitrability to the Arbitrator.  <u>See</u> Dkt.

32 at 20-21.  As the Court noted, there is no Second Circuit authority on this issue.  And there is

caselaw suggesting that the sophistication of the parties **is** significant in this determination.

<u>Vidal v. Advanced Care Staffing, LLC</u>, 2023 WL 2783251, at *10 (E.D.N.Y. Apr. 4, 2023);

<u>Stone v. Wells Fargo Bank, N.A.</u>, 361 F. Supp. 3d 539, 555 (D. Md. 2019).  Given this split of

authority, and the fact that the delegation issue could be determinative of whether the Court can

consider issues regarding the scope and interpretation of the agreement, this issue also satisfies

the criteria of Section 1292(b).

VI.    **CONCLUSION**

Plaintiff respectfully requests that the following questions for interlocutory appeal:

1.    Whether a worker claiming to be a transportation worker exempt from arbitration

under Section 1 of the FAA forfeits that exemption simply because he was required to form a

corporation when he began performing transportation services for a defendant.

18

2.     Whether the sophistication of the parties is a relevant consideration in determining whether reference to a specific arbitration provider constitutes clear and unmistakable delegation of arbitrability to an arbitrator.

**Dated:** June 3, 2024                                      Respectfully submitted,
New York, New York

                                                            /s/ Zachary L. Rubin
                                                            Zachary Rubin, ct30192

                                                            SEPPINNI LAW, PLLC
                                                            40 Broad St., 7th Fl.
                                                            New York, NY 10004
                                                            212-859-5085
                                                            zach@seppinnilaw.com

                                                            Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2024, I caused this pleading to be filed via the Court's ECF system, which served all counsel of record by email.

                                                            /s/ Zachary L. Rubin
                                                            Zachary L. Rubin