# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATHANIEL SILVA and PHIL ROTHKUGEL, on behalf of themselves and all others similarly situated, | : : : C.A. No. 3:23-cv-01695-MPS : : |
| Plaintiffs, | : |
| v. | : : |
| SCHMIDT BAKING DISTRIBUTION, LLC and SCHMIDT BAKING COMPANY, INC., | : : : |
| Defendants. | : : |

## **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

**I.     INTRODUCTION**

In opposing Plaintiffs' request to certify an issue which is unresolved in this Circuit and most others, Defendants primarily reargue the merits of the Parties' underlying "transportation worker" exemption dispute. In doing so, they fail to rebut Plaintiffs' showing that this issue is a significant and controlling question of law that is ripe for early review under 28 U.S.C. § 1292(b).

As already demonstrated, the issue for interlocutory appeal presents a significant legal question that has, at the very least, resulted in a split of authority.  Specifically, this Court's decision and the decision in Gray v. Schmidt Baking Co., Inc., 2023 WL 9285466 (D. Md. Oct. 16, 2023) hold that natural persons like Plaintiffs Silva and Rothkugel (as opposed to corporate entities) who indisputably perform interstate transportation work are *not* exempt from the Federal Arbitration Act ("FAA") if they signed their services contract on behalf of a corporate entity. However, under the same set of facts in New Prime Inc. v. Oliveira, 586 U.S. 105 (2019) and Canales v. C.K. Sales, 67 F.4th 38 (1st Cir. 2023), individual delivery drivers who performed nearly identical services pursuant to contracts signed by their corporations were held to be exempt from the FAA.  Thus, as Plaintiffs have explained in their motion, there is substantial grounds for disagreement on this issue.

However, the issue on Plaintiffs' § 1292(b) motion is not whether the Court got it right or wrong (which is the focus of Defendants' response), but whether the underlying issues meet the standard for interlocutory review.  The Plaintiffs meet and exceed this standard.   Accordingly, Plaintiffs respectfully request that the Court grant Plaintiffs' motion for certification of an interlocutory appeal under § 1292(b).

## II. ARGUMENT

**A. Plaintiffs Expressly Raised the Issue They Seek to Appeal**

In Plaintiffs' opposition to Defendants' motion to compel arbitration, they plainly argued that they were exempt from the FAA because they were transportation workers engaged in interstate commerce. Specifically, Plaintiffs argued "where the plaintiff-worker is asserting claims for unpaid wages arising from his work pursuant to an alleged 'independent contractor' agreement signed by his corporate entity, the agreement constitutes a contract 'to perform work' that is exempt from the FAA." Dkt. 24 at 17.[1] The Court disagreed and held that Plaintiffs were *not* exempt because their agreements were *not* contracts of employment under New Prime, 586 U.S. 105. Dkt. 32 at 9-10. This is the precise issue that Plaintiffs wish to appeal. Contrary to Defendants' opposition, Plaintiffs are not advancing new arguments.

Though some courts have held that parties are prohibited from raising new arguments in a §1292 petition, this is based on the "settled principle that courts of appeals should not consider arguments that parties failed to make below." Rodriguez v. Procter & Gamble Co., 499 F. Supp.

---

[1] Plaintiffs dedicated nearly an entire page to distinguishing the Gray holding:

> In New Prime v. Oliveira, 139 S. Ct. 532 (2019), the Court held that the Section 1 exemption excludes all **"agreement[s] to perform work,"** not just those between a traditional employee and employer. Id. at 544. In that case, **a contract between the plaintiff's corporation, Hallmark Trucking LLC, and the defendant, New Prime, Inc. (that purported to create an independent contractor relationship between Hallmark and New Prime) was held to be a contract of employment exempt from the FAA**. See Oliveira v. New Prime, Inc., 141 F. Supp. 3d 125, 128 (D. Mass. 2015) (district court decision describing that the "intent of the agreement is to establish an independent contractor relationship between New Prime and Hallmark Trucking LLC"), aff'd in part, dismissed in part, 857 F.3d 7 (1st Cir. 2017), aff'd, 139 S. Ct. 532, 202 L. Ed. 2d 536 (2019). Thus, the Supreme Court has squarely addressed this question and held that where the **plaintiff-worker** is asserting claims for unpaid wages arising from his work pursuant to an alleged "independent contractor" **agreement signed by his corporate entity, the agreement constitutes a contract "to perform work" that is exempt from the FAA**. See New Prime v. Oliveira, 139 S. Ct. 532, 544. **Here, the Distributor Agreement closely resembles the contracts at issue in New Prime, and therefore the agreements in this case are "contracts of employment" as that term is used in the FAA.**

See Dkt. 24 at 17. (emphasis added).

3d 1202, 1209 n.7 (S.D. Fla. 2020) (citations omitted). Here, it is clear that Plaintiffs argued that they worked pursuant to "contracts of employment" that are exempt from the FAA, so this issue is not "new," and it would be properly considered by the Second Circuit on appeal.

The decisions relied upon by Defendants regarding parties raising new issues in a §1292 certification motion are inapposite. For example, in Harris a *pro se* plaintiff submitted a lengthy list of issues that he wished to certify for appeal, many of which were incomprehensible (having been written by a non-attorney). See Harris v. TD Ameritrade Inc., 2019 WL 10945228, at *2 (S.D.N.Y. July 9, 2019). The court merely observed that "[t]o the extent that Plaintiff's motion seeks to certify questions involving new arguments," an interlocutory appeal on those issues was improper. See id. In Rodriguez, a defendant had argued at summary judgment that a DACA recipient-plaintiff 1) was not in a protected class under 42 U.S.C. § 1981 and 2) the defendant's allegedly discriminatory policy only considered "immigration status," and not "alienage," as that term was defined in the statute. See Rodriguez, 499 F. Supp. 3d at 1205. In its subsequent §1292 motion, the defendant made several new arguments, including that regulation of DACA recipients "must be committed to the political branches," an issue that had never been raised in the original briefing. Id. at 1209 n.6. The court declined to certify an appeal of these new issues. Id. at 1209-1210. That is a far cry from the situation here.

Likely recognizing that Plaintiffs have preserved the "contracts of employment" issue for appeal, Defendants quickly pivot and argue -- without citation to any authority -- that Plaintiffs are prohibited from citing any ***decisions*** in their §1292 petition that they did not previously cite in their Opposition to the Motion to Compel Arbitration. In making this argument, Defendants incorrectly tell this Court that Plaintiffs never cited the First Circuit's opinion in Canales v. CK Sales Co., LLC, 67 F.4th 38 (1st Cir. 2023) when opposing Defendants' motion to compel. See

3

Dkt. 38 at p. 24. Yet, Plaintiffs clearly cited the decision and noted that Canales addressed the precise factual scenario at issue in Bissonnette (and, by extension, the same facts of this case). See Dkt. 24 at p. 16 (Plaintiffs' opposition citing Canales where the First Circuit held that the same class of workers were exempt under Section 1).

Next, Defendants argue that the Court must ignore Plaintiffs' discussion of Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th 1190 (9th Cir. 2024) and ShaZor Logistics v. Amazon.com, LLC, 2022 WL 4277190, at *2 (E.D. Mich. Sept. 15, 2022), and similar cases that were cited for the first time by Defendants in their Reply.[2] Dkt. 38 at 22-24. Plaintiffs have cited these cases in their motion seeking §1292(b) review because several of these decisions highlight the substantial ground for difference of opinion on this issue (and because they contemplate that the analysis may have been different if the plaintiff claiming to be exempt was a natural person, as opposed to a corporation). See, e.g., ShaZor Logistics, LLC v. Amazon.com, LLC, 628 F. Supp. 3d 708, 712 (E.D. Mich. 2022) ("Plaintiff is not an independent contractor, employee, or worker; it is an LLC.").[3]

Here, in deciding whether Plaintiffs should be permitted to seek an interlocutory appeal, the question is not whether Plaintiffs have convinced the Court to reverse or reconsider its prior decision, but whether the underlying issue presents a significant legal question that warrants

---

[2] Because Defendants first cited these decisions in their Reply and not in their original motion, Plaintiff had no opportunity to address them other than seeking leave to file a Sur-Reply. Defendants do not identify any authority requiring a party to file a sur-reply in order to discuss certain caselaw in a subsequent §1292 motion.

[3] Defendants also argue that Plaintiffs never responded to a notice of supplemental authority (Dkt. 38 at p. 2), but fail to explain that Defendants submitted that authority four (4) business days prior to the Court's order on the motion to compel arbitration. Cf. Dkt. 31 (NOSA dated April 25, 2024), Dkt. 32 (Order dated May 2, 2024). In fact, Plaintiffs had prepared a response to Defendants' notice and were preparing to file their response the day the Court issued its order compelling arbitration. But again, there is simply no caselaw suggesting that a party in a Section 1292(b) petition cannot discuss the full range of relevant caselaw to demonstrate a substantial grounds for difference of opinion warranting appeal. Plaintiffs are not attempting to reargue the merits of the Court's underlying decision under a reconsideration framework.

review under the §1292(b) standard.[4] Indeed, even where a district court's ruling is consistent with the binding law of the Circuit, it still may be certified for interlocutory appeal. See generally Richards v. Eli Lilly & Co., 2024 WL 2126103, at *5 (S.D. Ind. May 10, 2024) (certifying interlocutory appeal regarding conditional certification under the ADEA even though the court noted that the two-step process that it had followed in granting conditional certification remains the law of the Circuit). Thus, Defendants' contention that Plaintiffs are raising new arguments or citing new cases is inaccurate and ultimately irrelevant.

B. **The Three Requirements of Section 1292(b) are Satisfied**

   i. **The issue of whether a human worker falls outside of the scope of the Section 1 exemption merely because he formed an LLC is a controlling question of law**

Defendants recognize that "[a] question of law can also be controlling if reversal of the district court's order 'could significantly affect the conduct of the action' or if 'the certified issue has precedential value for a large number of cases.'" Tantaros v. Fox News Network, LLC, 465 F. Supp. 3d 385, 389 (S.D.N.Y. 2020) (quoting Glatt v. Fox Searchlight Pictures Inc., No. 11-CV-6784, 2013 WL 5405696, at *2 (S.D.N.Y. Sept. 17, 2013) (other citation omitted)). The standard is met in this case.

First, there can be little dispute that whether Plaintiffs are forced to separately litigate two individual arbitrations as opposed to litigating a single proposed class action in court is significant, and thus the disposition on the Court's motion to compel arbitration will significantly

---

[4] Defendants suggest that Plaintiffs were required to seek reconsideration of the Court's order compelling arbitration before seeking to appeal the order (see Dkt. 38 at p. 13), but there is no basis for that argument under Section 1292(b) and Defendants cite no caselaw for the proposition. The standard for reconsideration and the standard under Section 1292 are entirely different. In contrast to a motion for reconsideration, on a Section 1292(b) motion, the Court is not deciding whether its original order was right or wrong. It is merely assessing whether it presents a significant question of law for which there are substantial grounds for difference of opinion (and whether allowing the appeal to proceed at this juncture will materially advance the ultimate termination of the litigation).

impact the trajectory of this case. Second, Defendants cannot seriously dispute that the Second Circuit's resolution of this issue will have precedential value for the many delivery drivers who are forced to create LLCs as a condition of employment. A review of the relevant authority discussed by both Parties shows that this underlying issue arises often. Indeed, issues regarding the application of the Section 1 exemption are of such precedential value that the Supreme Court has found it appropriate to grant *certiorari* in three separate cases involving the exemption within the past five years. See New Prime Inc., 586 U.S. 105; Sw. Airlines Co. v. Saxon, 596 U.S. 450 (2022); Bissonnette v. LePage Bakeries Park St., LLC, 601 U.S. 246 (2024). And although Defendants argue that district courts rarely certify questions for interlocutory appeal, the Second Circuit and Supreme Court have clarified that when an issue "'involves a new legal question or is of special consequence,' then the district court **'should not hesitate to certify an interlocutory appeal**.'" Balintulo v. Daimler AG, 727 F.3d 174, 186 (2d Cir. 2013) (emphasis added), quoting Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 111 (2009). And the application of the Section 1 exemption has been certified for interlocutory appeal in similar cases.[5]

Perhaps recognizing that the underlying issue is of significant consequence in this case and in others, Defendants argue the issue Plaintiffs seek to appeal is fact bound. That is inaccurate. See, e.g., Islam v. Lyft, Inc., 2021 WL 2651653, at *4 (holding that application of section 1 exemption was a controlling question of law). Here, the question on appeal is simply whether an individual worker (i.e., an actual human as opposed to a corporate plaintiff) falls within the scope of the exemption even if his contract to perform work is signed by an LLC. This is a purely legal question as reflected by the Supreme Court's opinion in New Prime, which Plaintiffs will argue on appeal resolves the question as a matter of law. In other words, Plaintiffs will be arguing that

---

[5] See Islam v. Lyft, Inc., 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021).

there is no daylight between the Supreme Court's legal holding and this case as a matter of law. Plaintiffs respect that the Court, on the other hand, interpreted New Prime as leaving room to find that the Section 1 exemption did not apply to delivery drivers that sign an agreement on behalf of a corporate entity. Regardless, the Second Circuit would be issuing a purely legal holding regarding whether New Prime controls the outcome of this case.

### ii. There are substantial grounds for difference of opinion regarding the underlying issue.

The second §1292(b) factor asks whether there are substantial grounds for difference of opinion regarding the issue a party seeks to appeal. Again, the Court need not agree with Plaintiffs' view of the Section 1 exemption to find that there are substantial grounds for a difference of opinion warranting appellate review. Indeed, courts often believe they were correct in their application of the law, but nevertheless certify for interlocutory appeal, recognizing that the issue is not free from doubt.[6] Here, Plaintiffs have advanced a highly plausible interpretation of New Prime that they contend has been accepted by a number of courts. See Brock v. Flowers Food, Inc., 673 F. Supp. 3d 1180, 1186 (D. Colo. 2023) ("Mr. Brock's status as an independent distributor who owns his own company, Brock, Inc., does not disturb [the] conclusion" that he was exempt from the FAA); see also Canales, 67 F.4th at 46 (holding that bakery distributor drivers performing the same duties as here were exempt from the FAA even where their contracts (signed on behalf of corporations) permitted them to "delegate driving to other persons" and the drivers were technically among a class of "workers who own companies"), cert. denied, No. 23-460, 2024 WL 1706017 (U.S. Apr. 22, 2024).

---

[6] See generally Richards, 2024 WL 2126103, at *5 (certifying interlocutory appeal regarding conditional certification under the ADEA even though the court noted that the process that it had followed in granting conditional certification remains the law of the Circuit).

7

Although Defendants point out that in Canales, the First Circuit found that the defendants waived the argument that the individual plaintiffs did not sign a "contract of employment," and thus the First Circuit declined to address that issue expressly, it is equally or more significant for purposes of this §1292(b) motion that a number of defendants, such as those in Canales, often have not even challenged New Prime's application in cases like the instant case, precisely because there is a substantial basis to interpret New Prime as resolving the entire issue (as Plaintiffs have argued).[7] Accordingly, Plaintiffs have shown that there are substantial grounds for difference of opinion.

### iii. Allowing an appeal now will materially advance the ultimate termination of this litigation, *regardless of the outcome on appeal.*

The third §1292(b) factor asks whether allowing the appeal will materially advance the ultimate termination of the litigation. See Weber v. United States, 484 F.3d 154, 159 (2d Cir. 2007) (finding that Congress "sought to assure the prompt resolution of knotty legal problems" in passing § 1292(b)). Here, allowing Plaintiffs to appeal now will avoid full litigation of the merits in two arbitration proceedings – including separate evidentiary hearings on the merits - before appealing to the Second Circuit the question of whether the two different arbitrators ever had jurisdiction over their claims in the first instance. See S.A. Mineracao Da Trindade-Samitri v. Utah Int'l Inc., 579 F. Supp. 1049, 1051 (S.D.N.Y. 1984) (granting permission to seek interlocutory review because "parties to this litigation will not have wasted two years in arbitrating claims that are later held to be nonarbitrable" if an appeal is successful).[8] Conversely,

---

[7] Indeed, as another example of this division *even among defendants*, in Green v. XPO Last Mile, Inc., 504 F. Supp. 3d 60 (D. Conn. 2020), the defendant conceded that the plaintiffs, whose delivery agreements were signed by LLCs, were exempt from the Federal Arbitration Act under New Prime. Id. at 66.

[8] See also Geico Corp. v. Penn. Power & Light Co., 689 F. Supp. 351, 354 (S.D.N.Y. 1988) ("[I]mmediate appeal at this juncture might well advance the ultimate termination of this dispute by putting the parties before the proper tribunal as soon as possible." (internal quotations and citation omitted).

if Plaintiffs appeal now they will either: (1) prevail and avoid two unnecessary arbitration proceedings entirely; or (2) lose their interlocutory appeal and proceed to arbitration for the ultimate termination of this case. This is precisely the type of scenario where immediate review will materially advance the ultimate termination of the litigation regardless of the outcome of the appeal. See Utah Int'l Inc., 579 F. Supp. at 1051 (holding, after granting a motion to compel arbitration, that "the Court is thoroughly persuaded that this is exactly the type of interlocutory decision that should receive immediate appellate review.").

Defendants tacitly recognize that it would be grossly inefficient to force Plaintiffs through two separate arbitration proceedings only to then be allowed to appeal whether the arbitrators had jurisdiction, insofar as they argue that if this inefficiency alone were enough for an interlocutory appeal, every decision compelling arbitration would be subject to interlocutory review. See Dkt. 38 at p. 31 (arguing that granting a motion to compel "would result in near-universal certification of such order for interlocutory appeal.") Of course, the efficiency considerations *are only one of three* §1292(b) factors that a party seeking an interlocutory appeal must show.[9] Thus, contrary to Defendants' argument, it is not at all true that finding that an interlocutory appeal *in this case* is warranted would set a precedent that it is warranted any time a court issues an opinion compelling arbitration.

Defendants also incorrectly argue that if Plaintiffs are exempt under the FAA, they can still be compelled to arbitration under Maryland law. Section 11.3 of the Agreement unambiguously states that the contract's Maryland choice-of-law provision applies to substantive law in the arbitration, "except that with respect to arbitration matters, the provisions of the Federal Arbitration Act shall be controlling." See Dkt. 11 at p. 69. Accordingly, Defendants have

---

[9] As the Court knows, courts frequently are called on to rule on motions to compel arbitration, many of which do not raise significant questions of law for which there are substantial grounds for reasonable disagreement.

designated the FAA as the governing law concerning all issues "with respect to arbitration matters," and specifically excluded the law of Maryland from applying to that issue.

In Rittmann v. Amazon, the Court was faced with a similar arbitration agreement that was expressly governed by the FAA. See Rittmann, 971 F.3d 904, 908 (9th Cir. 2020). After holding that the FAA did not apply, the court held that there was no intent to apply state law in its place. See id. at 920 ("Because it is not clear that the parties intended to apply Washington law to the arbitration provision in the event the FAA did not apply, we construe ambiguity in the contract against Amazon to avoid that result.").[10] Even if the Court disagreed and turned to Maryland law to compel arbitration, pursuant to the Defendants' contractual language, it could only do so after first finding that the FAA did not apply, given that the FAA is designated as the only governing law in regard to arbitration. And that the application of the FAA is the precise question that Plaintiffs wish to appeal.[11]

### III.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant their request for permission to file an interlocutory appeal under §1292(b).

---

[10]  See also Peter v. Priority Dispatch, Inc., 681 F. Supp. 3d 800, 803, n.3 (S.D. Ohio 2023) (declining to compel arbitration under state law where "the language of the arbitration clause at issue does not reflect that the parties unambiguously intended to displace the FAA with state rules of arbitration.") (internal quotation marks omitted), appeal pending at No. 23-3637 (6th Cir.).

[11]  Defendants also incorrectly argue that even if Plaintiffs were permitted to proceed in Court, the class action waiver would still apply. However, by its plain terms, the class action waiver in the Agreement only applies to each "Distributor," which is expressly defined as the LLCs, not Plaintiffs or other putative class member workers. Moreover, even assuming *arguendo* that the class action waiver could be enforced in this Court, that does not change the fact that the forum in which Plaintiffs proceed is a threshold issue that will materially advance this litigation. See D'Antuono v. Serv. Road Corp., 2011 WL 2222313, at *2 (D. Conn. June 7, 2011) ("Because a ruling from the Second Circuit may ensure that there is only one proceeding in one forum, rather than two proceedings in two different fora, the Court concludes that an interlocutory appeal could materially advance this litigation.").

Dated: July 1, 2024  
      New York, New York

Respectfully submitted,

*/s/ Zachary L. Rubin*  
Zachary Rubin, ct30192

Seppinni Law, PLLC  
40 Broad St., 7th Fl.  
New York, NY 10004  
212-859-5085  
zach@seppinnilaw.com

Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, I caused this pleading to be filed via the Court's ECF system, which served all counsel of record by email.

*/s/ Zachary L. Rubin*  
Zachary L. Rubin