UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NATHANIEL SILVA and PHIL ROTHKUGEL, on behalf of themselves and all others similarly situated,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>SCHMIDT BAKING DISTRIBUTION, LLC and SCHMIDT BAKING COMPANY, INC.,<br><br>    *Defendants*. | No. 3:23-cv-01695-MPS |

**RULING ON MOTION FOR CERTIFICATION OF INTERLOCUTORY APPEAL**

**I.    INTRODUCTION**

I assume the parties' familiarity with the facts of the case, which are documented in my ruling granting Defendants' motion to compel arbitration. *See* ECF No. 32 at 2-4. In short, Plaintiffs Nathaniel Silva and Phil Rothkugel brought this putative class action against Defendants Schmidt Baking Company, Inc. ("SBC") and Schmidt Baking Distribution, LLC ("SBD"). Plaintiffs allege that Defendants violated Connecticut wage laws by misclassifying them as independent contractors, making unlawful deductions from their wages, and failing to pay them for overtime work. Defendants filed a motion to compel arbitration, which I granted on May 2, 2024. Plaintiffs now seek leave to file an interlocutory appeal of this ruling. For the reasons set forth below, I grant such leave. In accordance with 28 U.S.C. § 1292(b), the Plaintiffs shall file an application with the Court of Appeals within ten days of this order.

**II.    LEGAL STANDARD**

A district court may certify an appeal of an order that is not otherwise appealable when it is "of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and [3] that an immediate appeal from the order

1

may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The determination of whether Section 1292(b) certification is appropriate under the above standards is in the discretion of the district court." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 569-70 (S.D.N.Y. 2001). The statute is to be "strictly construed." *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (internal quotation marks omitted). However, "[w]hen a ruling satisfies these criteria and involves a new legal question or is of special consequence, then the district court should not hesitate to certify an interlocutory appeal." *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (internal quotation marks omitted).

"When a district court certifies, pursuant to 28 U.S.C. § 1292(b), a question of controlling law, the entire order is certified and [the Court of Appeals] may assume jurisdiction over the entire order, not merely over the question as framed by the district court." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 391-92 (2d Cir. 2008). Thus, "[t]he court need only identify one controlling question of law that satisfies § 1292(b) to certify the entire order for appeal." *U.S. Underwriters Ins. Co. v. Kenfa Madison, LLC,* No. 20-cv-2761, 2023 WL 5617772, at *3 (E.D.N.Y. Aug. 30, 2023).

### III.   DISCUSSION

Plaintiffs present two questions for certification:

(1) "whether an individual worker . . . falls within the scope of the exemption [under § 1 of the Federal Arbitration Act ("FAA")] even if his contract to perform work is signed by an LLC," ECF No. 44 at 7, and

(2) "[w]hether the sophistication of the parties is a relevant consideration in determining whether reference to a specific arbitration provider constitutes clear and unmistakable delegation of arbitrability to an arbitrator," ECF No. 33 at 25.

Defendants contend that both questions fail to fulfill § 1292(b)'s requirements. For the reasons discussed herein, I conclude that the FAA § 1 exemption issue satisfies § 1292(b) and thus certify my order compelling arbitration for appeal.[1]

### A. Controlling Question of Law

An order involves a "controlling question of law" if reversal on that question would "result in dismissal" or otherwise "significantly affect the conduct of the action." *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001). The district court "may also consider the system-wide costs and benefits of allowing the appeal," including whether resolution of the issue "would aid district courts in a large number of cases." *Islam v. Lyft, Inc.*, No. 20-cv-3004, 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021) (internal quotation marks omitted). Finally, the issue must be "a pure question of law that the reviewing court could

---

[1] Because § 1292(b) "brings the order, not the question, before the [circuit] court," the Second Circuit can exercise its discretionary authority over other issues raised by the certified order, including the delegation of arbitrability issue that Plaintiffs move to certify. *United States v. Stanley*, 483 U.S. 669, 677 (1987) (internal quotation marks omitted). I decline to grant Plaintiffs' motion as to this question, however, because it does not satisfy the requirements of § 1292(b).

Specifically, it is not a "controlling question of law." Plaintiffs' motion does not address the "controlling question of law" requirement as it relates to this issue, *see* ECF No. 33 at 24, but amicus Public Justice contends that this factor is satisfied because a Second Circuit decision "would materially affect the course of the remainder of the litigation" and "would provide important guidance to lower courts and litigants grappling with" this issue, ECF No. 37-1 at 19 (internal quotation marks omitted). In support, amicus cites *In re A2P SMS Antitrust Litigation*, No. 12-cv-2656, 2015 WL 876456 (S.D.N.Y. Mar. 2, 2015), a case in which the court concluded that the issue of whether the court or the arbitrator should decide the availability of class arbitration was a controlling question of law. However, that case presented "a pure question of law: who decides—the court or the arbitrator—whether an arbitration agreement permits class arbitration[.]" *Id.* at *4. "The only issue specific to the facts of [that] case that was raised in the Court's [prior order] [wa]s whether Plaintiffs waived the argument that the arbitrator should decide the availability of class arbitration." *Id.* The District Court had already ruled that the issue had not been waived, *In re A2P SMS Antitrust Litig.*, No. 12-cv-2656, 2014 WL 2445756, at *2-*4 (S.D.N.Y. May 29, 2014), and the moving party had not sought to certify this question for appeal, *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *4.

Here, by contrast, the arbitrability issue that Plaintiffs seek to certify is predicated on a factual determination that this Court has not yet made: that the Plaintiffs are unsophisticated parties. As I explained in my order compelling arbitration, however, "Plaintiffs here have not done enough to show that they are, in fact, unsophisticated parties," and the record is replete with facts that could support a contrary finding. ECF No. 32 at 21 n.6. Thus, it is possible that this issue would have no bearing on the facts of this case. Because resolution of this issue would also require "extensive examination of the record in this case," *In re A2P SMS Antitrust Litig.*, 2015 WL 876456, at *4, it fails to satisfy § 1292(b)'s "controlling question of law" requirement.

3

decide quickly and clearly without having to study the record." *Williston v. Eggleston*, 410 F. Supp. 2d 274, 276 (S.D.N.Y. 2006) (internal quotations marks omitted).

This issue is one with substantial precedential value. Defendants contend that "the number of cases that have addressed whether a business-to-business contract can qualify as a 'contract of employment' is [actually] quite small." ECF No. 38 at 35. As Plaintiffs explain, however, "the scope of the transportation worker exemption is a hotly contested issue across the country," and companies are increasingly "requir[ing] delivery drivers and other workers to incorporate in order to perform work." ECF No. 33 at 21; *see also* ECF No. 36 at 22-23 (explaining that "incorporation requirements . . . are becoming an increasingly common form of independent contractor misclassification," particularly "in the trucking industry"). It is reasonable to expect that this practice will become even more common and will be litigated more frequently in the wake of my order compelling arbitration and other decisions like it. Thus, a Second Circuit ruling on this issue "would provide valuable guidance to a great number of litigants and lower court judges." *Islam v. Lyft, Inc.*, No. 20-cv-3004, 2021 WL 2651653, at *4 (S.D.N.Y. June 28, 2021).

Defendants also argue that the § 1 issue is not a "pure question of law" because the Second Circuit would have to "consider Plaintiffs' allegation that they 'were required to form corporate entities' . . . in order to resolve the 'contracts of employment' issue." ECF No. 38 at 36. But my holding on this issue was not so framed. I addressed the question of "whether a contract between two business entities could constitute a 'contract of employment' within the meaning of § 1." ECF No. 32 at 7; *see also id.* at 10 ("Because the Distribution Agreements here are between two business entities, they are not contracts of employment and the § 1 exception does not apply."). This is "an abstract legal issue" that can be resolved without resort to the

4

factual record and therefore constitutes a pure question of law. *Flores v. Nat'l Football League*, No. 22-cv-0871, 2024 WL 50238, at *3 (S.D.N.Y. Jan. 4, 2024) (internal quotation marks omitted). Because my order addressed a pure question of law that could significantly affect the conduct of the action and has significant precedential value, it constitutes a "controlling question of law" within the meaning of § 1292(b).

### B. Substantial Ground for Difference of Opinion

A "substantial ground for difference of opinion" exists when "(1) there is conflicting authority on an issue or (2) the case is particularly difficult and of first impression within this Circuit." *United States ex rel. Drake v. NSI, Inc.*, 736 F. Supp. 2d 489, 503 (D. Conn. 2010). "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient." *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996). Rather, "it is the duty of the district judge to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a *substantial* ground for dispute." *In re Teva Sec. Litig.*, No. 3:17-cv-558, 2021 WL 1197805, at *7 (D. Conn. Mar. 30, 2021) (internal quotation marks omitted).

Plaintiffs contend that there is "conflicting authority" on the scope of the FAA § 1 exemption. ECF No. 33 at 21. They contest my interpretation of *New Prime Inc. v. Oliveira*, 586 U.S. 105 (2019), and maintain that *Oliveira* is part of a "line of cases" in which courts have held that "truck drivers who assert claims for unpaid wages are transportation workers exempt from the FAA, even where they were required to incorporate and signed an independent contractor agreement or similar contract on behalf of that corporate entity." *Id.* at 21.

As explained in my ruling on the motion to compel arbitration, I disagree with Plaintiffs' characterization of *Oliveira* and related cases. ECF No. 32 at 7-9. *Oliveira* did not address

whether § 1 applies to contracts between two business entities, and the lower courts that have ruled on this question "have uniformly answered it in the negative." *Id.* at 7-8.

I do recognize, however, that my decision and others like it stand in tension with cases like *Oliveira*, in which courts have emphasized function over form when defining the contours of the transportation worker exception. 586 U.S. at 113, 121 (holding that "the term 'contracts of employment' refer[s] to agreements to perform work," not just "contracts that reflect an employer-employee relationship," and thus "encompasses contracts that require an independent contractor to perform work"); *see also, e.g.*, *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 451, 456 (2022) (observing that use of the words "workers" and "engaged" in § 1 of the FAA "directs the interpreter's attention to the *performance* of work" and "emphasizes the actual work that the members of the class, as a whole, typically carry out" (internal quotation marks omitted)). It also stands in tension with wage and hour case law and other employment-related cases that look to the substance of a worker's relationship with the entity for which she works in deciding whether the worker is an "employee." *See, e.g.*, *Jason Robert's, Inc. v. Adm'r*, 127 Conn. App. 780, 782-83, 787 (2011) (concluding that a worker was an "employee" and thus was eligible to receive benefits under Connecticut's Unemployment Compensation Act even though the business for which he worked had "directed [him] to set up a business so that he could [work for the business] as a licensed dealer" and had classified him as an independent contractor); *Padovano v. FedEx Ground Package Sys., Inc.*, No. 16-cv-17, 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) ("If any business could avoid [New York wage and hour laws] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, [these laws] would be rendered useless."); *DaSilva v. Border Transfer of MA, Inc.*, 377 F. Supp. 3d 74, 86 (D. Mass. 2019) ("[T]he mere fact of incorporation does not

6

defeat a [Massachusetts] Wage Act claim.  The Court therefore need not entertain Defendants' arguments that . . . workers who incorporate [are excluded from] from Wage Act protection. These formalistic arguments run headlong into the Wage Act's purpose of classifying workers as employees based on the circumstances of their employment." (citations omitted)); *Slayman v. FedEx Ground Package Sys., Inc.*, 765 F.3d 1033, 1042 (9th Cir. 2014) ("Oregon law is clear that a contract's recitation of an independent-contractor relationship is not dispositive [regarding whether a worker is an employee covered by Oregon wage and hour laws].  What matters is what the contract, in actual effect, allows or requires." (citations omitted)).  All these cases have focused on the actual work performed by the plaintiffs, rather than the legal form of the parties' work relationship or the industries in which they worked.

While I believe my ruling is a faithful application of § 1, I acknowledge that the actual work performed by workers under business-to-business contracts may be functionally indistinguishable from the work done in employment relationships, and that my decision creates a potential loophole that could undermine § 1's purpose.  Though these tensions likely fall short of creating a true "conflict of authority" on the § 1 issue that is presented in this case, they do make the issue "particularly difficult," and the Second Circuit could very reasonably reach a different conclusion.  Because this issue is particularly difficult, as well as an issue of first impression for the Second Circuit, *see* ECF No. 32 at 8-9 (identifying the lower court cases that have addressed this issue, none of which were issued by the Second Circuit), it satisfies the "substantial ground for difference of opinion" prong of § 1292(b).[2]

---

[2] Defendants' only arguments as to why this issue is not "particularly difficult and of first impression" is that (1) Plaintiffs "only argue[d] the 'conflicting authority' route" for satisfying the second § 1292(b) factor and, (2) that "the Second Circuit has held that the mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." ECF No. 38 at 37-38 (internal quotation marks omitted).  Their first argument fails because Plaintiffs did address the second "route" for satisfying the "substantial ground" factor.  Plaintiffs explicitly stated that this issue met both of the "conditions" for the second § 1292(b) element.  ECF No. 33 at 21.  In addition, Plaintiffs made several arguments that speak to why

7

**C. Materially Advance the Ultimate Termination of the Litigation**

An immediate appeal "may materially advance the ultimate termination of the litigation" if it "promises to advance the time for trial or to shorten the time required for trial," *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) (internal quotation marks omitted), or otherwise "ha[s] the potential for substantially accelerating the disposition of the litigation," *Wausau Bus. Ins. Co. v. Turner Const. Co.*, 151 F. Supp. 2d 488, 491 (S.D.N.Y. 2001) (internal quotation marks omitted).

Certifying this issue could accelerate the time for trial because, "[i]f the Second Circuit hears the appeal and holds that Plaintiff cannot be compelled to arbitrate, it will have saved the parties the expense and burden of arbitration, and allow the case to proceed to resolution in district court."[3] *Islam v. Lyft, Inc.*, No. 20-cv-3004, 2021 WL 2651653, at *5 (S.D.N.Y. June 28, 2021). The merits of the two Plaintiffs' claims would only be decided once, and they would also be litigated together in a single proceeding.[4]

On the other hand, if an immediate appeal of this issue is not permitted, then the parties would be left to dispute the merits of Plaintiffs' claims in two separate arbitrations, only to have

---

this issue is "particularly difficult." *Id.* at 21-22 (noting that there is "nothing in the text or history of the FAA, nor in any of the Supreme Court's recent decisions, that would support a distinction between incorporated delivery drivers and unincorporated delivery drivers" and that this issue has "significant ramifications for the purposes of the FAA and interstate commerce"). Defendants' second argument likewise fails because, as explained above, the issue is "particularly difficult," in addition to being a question of first impression.

[3] Defendants contend that certification of this question would not advance the ultimate termination of this case because, even if the Second Circuit concludes that the FAA § 1 exception applies to Plaintiffs, Plaintiffs may be required to arbitrate under the Maryland Uniform Arbitration Act (MUAA). ECF No. 38 at 40. Section 12.8 of the parties' Distribution Agreements specifies that the "validity, interpretation and performance of th[ese] Agreement[s] shall be controlled and construed in accordance with the laws of the state of Maryland, without regard to its choice of law provisions." ECF No. 11 at 17. As Plaintiffs note in their reply brief, however, Section 11.3 of the Distribution Agreements provides that "[t]he arbitrator shall apply the substantive law specified in Section 12.8 of this Agreement, *except that with respect to arbitration matters*, the provisions of the Federal Arbitration Act shall be controlling." *Id.* at 7 (emphasis added). Thus, it seems unlikely that the MUAA would pose an additional bar to Plaintiffs' ability to litigate these issues.

[4] The joinder rules, *see* Fed. R. Civ. P. 20 and 21, not the parties' agreements, will govern whether the two Plaintiffs may prosecute their claims in a single action in this Court.

the Plaintiffs then appeal this issue after obtaining final judgments. If Plaintiffs prevail on appeal, the arbitrations would become moot and the parties would be required to relitigate their claims in District Court. This is exactly the type of "protracted" and "fruitless litigation" that § 1292(b) was designed to avoid. *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 866 (2d Cir. 1996).

Defendants contend that this reasoning is "ordinarily true of any order granting a motion to compel." ECF No. 38 at 39. And indeed, it is. As Plaintiffs note in their reply, however, this is "only one of three §[ ]1292(b) factors that a party seeking an interlocutory appeal must show." ECF No. 44 at 10. Thus, this reasoning would not "result in near-universal certification of such orders," as Defendants claim, ECF No. 38 at 39, because such orders must also satisfy the other two factors.

Further, an immediate appeal would likely accelerate the disposition of this case even if the Second Circuit *affirmed* my ruling on this issue. As discussed above, it is plausible that the Second Circuit might issue a new rule regarding this question. This issue also has significant precedential value for workers across the country, which appears to be motivating amici's interest in this case. An interlocutory decision affirming my ruling would take the prospect of a favorable Second Circuit ruling off the table for Plaintiffs. This, in turn, may make it all the more likely that Plaintiffs would choose not to arbitrate these claims or would agree to a settlement, given the expense of arbitrating the claims separately. Accordingly, an immediate appeal from my order could materially advance the ultimate termination of litigation regardless of how the Second Circuit rules.

### IV.     CONCLUSION

For the foregoing reasons, the Motion to Leave to Appeal, ECF No. 33, is GRANTED.

IT IS SO ORDERED.

/s/

Michael P. Shea, U.S.D.J.

Dated: Hartford, Connecticut

July 29, 2024